This was a proceeding to determine heirship. William Adams died intestate on September 27, 1918, in France while serving in the United States Army. The only property involved is the residue of the proceeds of a government insurance policy. Payments thereunder were made to his brother, during his lifetime, who was the beneficiary in the policy. A substantial residue of the insurance remained after the death of the brother, which is payable to the heirs of William Adams. Adams left surviving him brothers, sisters and the children of the deceased brother. His mother survived him but died prior to the demise of his brother, who, as stated, was the beneficiary under the policy of insurance. The contest here is between his illegitimate daughter, his brothers and sisters and the children of the deceased brother. The illegitimate daughter, Dorothy Elizabeth Adams, was born to Vernie White Lamma on August 14, 1917. The mother and William Adams were never married.
Appropriate pleadings were filed in this proceeding for the determination of heirship. However, on the trial of the case, all the facts were admitted by stipulation of counsel for the respective parties, with the exception of two issues, namely: The paternity of Dorothy Elizabeth Adams and the question as to whether or not her paternity was acknowledged in writing by William Adams in the presence of a competent witness. *Page 72 
The case was tried before the court sitting without a jury. Findings of fact were made by the trial court in conformity with the stipulations of counsel, and on the issues submitted for decision the court found that Dorothy Elizabeth Adams was the illegitimate daughter of Vernie White Lamma and William Adams, deceased, and that William Adams, deceased, during his lifetime never in any manner acknowledged, in writing before a witness, that he was the parent or father of Dorothy Elizabeth Adams. Judgment was entered in accordance with the findings. The appeal is from the judgment.
The appellant specifies as error the making and entering of the judgment, and that the evidence is insufficient to support the judgment of the court.
The pertinent portion of section 7074, Revised Codes 1921, provides: "Every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock."
It is conceded that in order for the appellant to prevail in this proceeding it was necessary for her to establish a case within the foregoing statutory provision.
A writing acknowledging the paternity of an illegitimate child[1] by the father, the execution of which is witnessed by a competent witness, is a sufficient compliance with the statute without regard to the purpose for which the instrument was executed. (In re Wehr's Estate, 96 Mont. 245,29 P.2d 836.)
The mother of Dorothy Elizabeth Adams testified that she advised William Adams by mail of the birth of this child while he was in the army stationed at Camp Lewis, Washington, in the year 1917, and that she received a letter in reply from him, dated January 12, 1918, which she identified and produced in evidence, wherein he made statements tending to acknowledge that he was the father of Dorothy Elizabeth *Page 73 
Adams. The mother testified that William Adams, deceased, was the father of Dorothy Elizabeth Adams.
One Harry Blair, who was a cousin of Vernie White Lamma, testified that in the fall of 1917 he entered school at the Cushman Indian School near Tacoma, in the state of Washington; that while he was there in school he went to Camp Lewis, likewise near Tacoma, on January 12, 1918, where he visited with William Adams, with whom he was previously acquainted; that their conversation occurred at the Y.M.C.A. barracks, and that when he arrived he found Adams writing the letter received in evidence in this case, directed to Mrs. Lamma; that he saw Adams sign the letter and the latter read the letter to the witness at that time. Blair testified on cross-examination that he remembered the date for the reason that on this trip he bought his first suit of clothes in Tacoma. He testified that he went from Cushman to Tacoma with some three or four other boys who attended the Indian school, but was unable, although he had seen them daily during the preceding fall, to recall the names of any of them. Suffice it to say that his memory with reference to subjects of inquiry, other than the date of the letter and what was said to him while at Camp Lewis, was indeed very poor. His was the only testimony tending to establish the signing of the letter on January 12, 1918, in the presence of a witness.
Blair conceded that at the time he first entered the Indian school at Cushman he went in company with a number of other Indian children from Browning, Montana, in charge of one Huntsberger. He insisted throughout that Huntsberger and this party of children left Browning in the fall of 1917. Huntsberger was called as a witness for the defendants; he testified positively that Blair went to Cushman as a member of a party of children, among whom was his own son, all of whom were in his charge, in the fall of 1918; that he went on this trip for the purpose of investigating conditions at Tacoma with a view of locating there; that later in the fall, approximately two months thereafter, he returned to Tacoma, and recalled that it was in the fall of *Page 74 
1918 by reason of the occurrences in connection with the celebration there of the signing of the Armistice, which happened immediately following his arrival. The testimony of Mrs. Huntsberger corroborated that of her husband.
A Mrs. McKnight, the mother of one of the children in the party conducted by Huntsberger, testified positively as to the children in charge of Mr. Huntsberger going to the Cushman Indian School in the fall of 1918.
Mrs. Lamma, the mother of Dorothy Elizabeth Adams, testified that she corresponded with Blair in the fall of 1917 at the Cushman Indian School. Her sister, Mrs. Aubrey, testified that she recalled that Blair went to the Indian school in the fall of 1917 because she remembered that her eldest child was about seven months old at the time he left, and that this child was born in January, 1917.
The trial court made the following finding: "That the testimony produced by the contestant and plaintiff from one Harry Blair that he was in Tacoma at Camp Lewis on the 12th day of January, 1918, and that he witnessed a writing, to-wit, a letter written and signed by the deceased William Adams is so inherently improbable and is so self contradictory as to be unworthy of belief, and the testimony by the defendants that the said Harry Blair was not at Tacoma or Camp Lewis on the 12th day of January, as testified, conclusively establishes the falsity of his testimony."
The testimony in the case was in conflict as to whether or not Blair was in the Indian school at Cushman at the time the letter was signed on January 12, 1918. It is conceded that if he was not in the Indian school in the fall of 1917, he was not in Camp Lewis in January, 1918.
The decision of a trial court will not be reversed unless it[2, 3] is shown that the evidence strongly preponderates against its findings, and where there is a sharp conflict in the evidence and it furnishes reasonable ground for differing conclusions, the findings will not be disturbed. (Kirby v. Hoeh, 94 Mont. 218,21 P.2d 732; Fender v. Foust, *Page 75 82 Mont. 73, 265 P. 15; Baker v. Citizens' State Bank,81 Mont. 543, 264 P. 675.)
There was sufficient evidence to support the finding of the trial judge. Likewise there was sufficient evidence to support a finding in favor of the appellant, if it was believed by the trial court. It was not believed by the court.
Therefore, under the rules of this court, the judgment must be affirmed. It is so ordered.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.